DAVID P. BEITCHMAN, SBN 198953
dbeitchman@bzlegal.com
TODD E. CHVAT, SBN 238282
tchvat@bzlegal.com
**BEITCHMAN & ZEKIAN, P.C.**
16130 VENTURA BLVD., SUITE 570
ENCINO, CALIFORNIA 91436
TELEPHONE: (818) 986-9100
FACSIMILE:  (818) 986-9119

Attorneys for Defendant/Counter-Claimant LUPE FUENTES, LLC

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMSON INVESTMENTS, AVV, a Netherlands Antilles company,<br><br>Plaintiff,<br><br>vs.<br><br>EVAN SEINFELD, an individual; LUPE FUENTES, LLC, a California limited liability company; WEBQUEST, INC., a California corporation; NETBILLING, INC., a California Corporation; LOCAL BILLING, LLC, a California limited liability company; and Does 1-10, inclusive.<br><br>Defendants. | Case No. CV10-6178- CAS (AGRx)<br><br>**LUPE FUENTES, LLC'S COUNTERCLAIM FOR:**<br><br>(1) DECLARATORY RELIEF;<br>(2) CANCELLATION OF TRADEMARK;<br>(3) CYBERPIRACY IN VIOLATION OF 15 U.S.C. §1125(d); and<br>(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE<br><br>**[DEMAND FOR JURY TRIAL]** |

|   |   |
|---|---|
| LUPE FUENTES, LLC, a California limited liability company, | ) ) ) ) |
| Counter-Claimant, | ) ) |
| vs. | ) ) |
| SAMSON INVESTMENTS, AVV, a Netherlands Antilles company; and Roes 1-10, inclusive | ) ) ) ) ) |
| Counter-Defendant. | ) |

For its counter-claims against SAMSON INVESTMENTS, AVV and ROES 1 through 10 (hereinafter collectively referred to as "Counter-Defendants"), Counter-Claimant LUPE FUENTES, LLC (hereinafter referred to as "Counter-Claimant") states as follows:

## THE PARTIES

1. At all times mentioned herein, Counter-Claimant is and was a California limited liability company.

2. Counter-Claimant is informed and believes, and thereon alleges that Counter-Defendant SAMSON INVESTMENTS, AVV is and at all times herein mentioned was, a Netherlands Antilles company transacting business in the County of Los Angeles, State of California.

3. Counter-Claimant is informed and believes, and thereon alleges, that Counter-Defendants ROES 1 through 10, inclusive, and each of them, at all times mentioned herein were individuals residing in the State of California and/or were companies, partnerships, associations, corporations, or other business entities, authorized to and doing business in the County of Los Angeles California.

4. Count- Claimant is presently unaware of the true names and capacities of Counter-Defendants designated herein as ROES 1 through 10, inclusive, and Counter-Claimant therefore sues said Counter-Defendants by such fictitious names and will seek leave of the Court to amend this Counter-claim to set forth the true names and capacities of the fictitiously designated Counter-Defendants when same has been ascertained.

5. Counter-Claimant is informed and believes, and thereon alleges, that each Counter-Defendant designated herein as a ROE is responsible in some manner for the acts, occurrences and/or liabilities hereinafter referred to and alleged.

6. Counter-Claimant is informed and believe, and thereon allege, that Counter-Defendants, and each of them, were, and now are, the agents, servants, employees, co-venturers, partners, or in some manner agents or principals, or both, for each other, and were acting in the course and scope of their agency or employment at all times mentioned herein.

## JURISDICTION

7. This Court has jurisdiction over the Counter-claims stated herein as they fall within this Court's supplemental jurisdiction by virtue of the fact that they relate to the common nucleus of operative facts contained in the underlying action.

8. This Court also has subject matter jurisdiction over the claims set forth herein pursuant to 28 U.S.C. §1331 AND 1338(a).

## PRELIMINARY ALLEGATIONS

9. In late 2006, Zuleydy Piedrahita Vergara entered into a Modeling Services Agreement ("the Modeling Agreement") with First Choice Management/Venus Management ("First Choice/Venus"), by and through First Choice/Venus' principal Mr. Paolo Cammarata ("Paolo").

10. Pursuant to the Modeling Agreement, in exchange for the sum of $30,000.00, Ms. Vergara was to provide specific services in the form of modeling and acting in connection with thirty (30) scenes of adult video content.

11. In furtherance thereof, Ms. Vergara fulfilled her obligations, appeared in the delineated thirty (30) scenes, and was paid $30,000.00 by Paolo for doing so.

12. Prior to the Modeling Agreement, Ms. Vergara had gained some notoriety as a nude model in Spain, her country of residence.

13. As is standard in the adult industry, rather than use their birth/legal names, models and performers almost universally adopt stage names which serve as a source identifier with the consuming public.

14. Often these stage names bear some relation to the particular performer's personal life, i.e., a favorite celebrity, a nickname, or a derivative of the same.

15. Here, knowing that she would not want her birth/legal name being used in connection with the adult content filmed under the Modeling Agreement, Ms. Vergara decided to use the English translation of her life-long nickname, "Little Lupe," as her stage name.

16. In this regard, Ms. Vergara discussed with Paolo her desire not to use her real name in connection with the exploitation of adult content filmed under the Modeling Agreement, and suggested using the name "Little Lupe" in connection with the adult content filmed under the Modeling Agreement.

17. Ms. Vergara also discussed with Paolo her intent on using the stage name "Little Lupe" in the future for other adult-related endeavors, with or without any association to First Choice/Venus.

18. This name had special meaning to Ms. Vergara because "Peque Lupe," meaning "small Lupe" or "little Lupe" in English, was a nickname created and often used by Ms. Vergara's family and friends when she was a child given her small stature - standing at 4'9" and weighing 80 pounds even at adulthood.

19. Accordingly, the designation "Little Lupe" and its use in connection with the services performed by Ms. Vergara was of Ms. Vergara's own creation and was not coined by First Choice/Venus, or any affiliated entity or individual.

20. The designation "Little Lupe" identifies Ms. Vergara, a living individual.

21.  The Modeling Agreement did not give First Choice/Venus, or any affiliated entity or individual, any ownership rights in the stage name "Little Lupe", or any other stage name to be used by Ms. Vergara.

22.  Rather, as is typically the case with modeling service agreements, only the content or footage shot under the Modeling Agreement was to be owned by First Choice/Venus.

23.  The Modeling Agreement was very specific in that it only called for the production of the thirty (30) scenes and copyright ownership rights by First Choice/Venus solely in connection with those scenes.

24.  No consent, approval or authorization was ever given by Ms. Vergara to First Choice/Venus, or any affiliated entity, individual or assignee to own, claim ownership rights in, register or attempt to register the stage name "Little Lupe".

25.  In fact, in order to memorialize Ms. Vergara's expressed intentions but still benefit First Choice/Venus, the Modeling Agreement specifically called for Ms. Vergara to refrain from shooting or appearing in any other adult related content not affiliated with First Choice/Venus for a period of eighteen (18) months.

26.  To that end, Ms. Vergara agreed not to shoot or perform in any other adult scenes for eighteen (18) months and despite her ownership of the stage name, agreed not to use it with any other non-affiliated entity for the same eighteen (18) month period.

27.  At all times, though, Ms. Vergara retained her ownership rights in the stage name "Little Lupe".

28.  In essence, the Modeling Agreement only gave First Choice/Venus copyright ownership rights in the thirty (30) filmed scenes and a perpetual license to use the name "Little Lupe" in order to commercially exploit the same, with exclusivity for the first eighteen (18) months.

29.  After the agreed upon eighteen (18) month exclusivity period was over, Ms. Vergara was free to produce adult content with anyone of her choosing and free to use her stage name "Little Lupe" or any variation similar thereto.

30. Thus, while First Choice/Venus may have had the right to use the stage name "Little Lupe" in connection with the promotion of the scenes, neither First Choice/Venus nor any affiliated entity, individual or assignee has or has ever had, any ownership rights in the mark.

31. In addition, by way of an oral agreement entered after the Modeling Agreement, Ms. Vergara was given the right to use the adult content shot under the Modeling Agreement after the expiration of the eighteen (18) month exclusivity provision.

32. Said usage was granted to Ms. Vergara in exchange for the services of her then fiancé, Mr. Pablo Lapiedra, who directed and filmed all the scenes for First Choice/Venus without payment or other compensation; his sole compensation being the right to exploit the works he shot after the eighteen (18) month exclusivity period had expired.

33. In January of 2010, well after the eighteen (18) month exclusivity and non-use period had passed, Ms. Vergara and Evan Seinfeld formed the entity Lupe Fuentes, LLC.

34. Any and all trademark and/or usage rights held by Ms. Vergara were assigned to Lupe Fuentes, LLC.

35. Shortly thereafter, Lupe Fuentes, LLC began producing adult-related content using the stage name "Lupe Fuentes" and posting the same on the domain address www.ilovelupe.com. To that end, Lupe Fuentes, LLC contracted with Webquest, Inc. to promote and distribute its content online.

36. Despite its ownership rights, Lupe Fuentes, LLC consciously chose to use the stage name "Lupe Fuentes" rather than "Little Lupe" to purposely disassociate itself from First Choice/Venus, Paolo and Counter-Defendant's licensed use of the mark "Little Lupe" given that their usage, whether it be intentional or not, marketed Ms. Vergara in a way to appear as an underage performer ("referring on their website to Ms. Vergara as "the TEEN you have been looking for").

37. In doing so, Counter-Defendant was able to appeal not only to those individuals seeking regular online adult content, but those with a particular preference for underage deviant sexual behavior.

38. Accordingly, despite its ownership rights in the name "Little Lupe", by adopting the stage name "Lupe Fuentes" Counter-Claimant was able to distance itself from any former exploitations of "Little Lupe" by First Choice/Venus, Paolo and/or Counter-Defendant and simultaneously move forward with the name "Lupe" which fans had come to associate Ms. Vergara with.

39. Lupe Fuentes, LLC is the owner of pending trademark applications for "LUPE FUENTES" (U.S. Serial No. 85131431) and "ILOVELUPE.COM" (U.S. Serial No. 85132234) in connection with "[e]ntertainment services in the nature of live acting, dancing performances and modeling for adult performances and public appearances of a star of adult movies; entertainment services, namely providing visual pictures and images in the field of adult entertainment via the internet."

40. Additionally, in reliance of the oral agreement/authorization set forth in paragraph 31, Lupe Fuentes, LLC was given access to the footage shot in connection with the Modeling Agreement and posted portions thereof on www.ilovelupe.com, again, well after the agreed upon eighteen (18) month time-period.

41. Immediately upon notification that Counter-Defendant was apparently recanting on the oral agreement/authorization to use the adult content shot under the Modeling Agreement, Counter-Claimant had any and all such posted materials removed.

## FIRST CAUSE OF ACTION
(Declaratory Relief Against all Counter-Defendants)

42. Counter-Claimant hereby incorporates by reference each and every allegation contained in paragraphs 1 through 41 as though fully set forth herein.

43. An actual controversy has arisen between Counter-Claimant and Counter-Defendants, and each of them, with respect to the rights, obligations and/or duties of the parties.

44. Counter-Claimant contends that it is the legal and/or equitable owner of the trademark/service mark "Little Lupe", that Counter-Defendants do not have any

ownership interests in said mark, and that Counter-Defendants were never given consent by Ms. Vergara or Lupe Fuentes, LLC to register or attempt to register the mark "Little Lupe" which identifies a living individual, i.e., Ms. Vergara.

45. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendant contends that it is the owner of the trademark/service mark "Little Lupe".

46. To that end, Counter-Claimant seeks a judicial determination that it is the legal and/or equitable owner of the trademark/service mark "Little Lupe", that Counter-Defendants do not have any ownership interests in said mark, and that Counter-Defendants were never given consent by Ms. Vergara or Lupe Fuentes, LLC to register or attempt to register the mark "Little Lupe" which identifies a living individual, i.e., Ms. Vergara.

47. A judicial determination is necessary and appropriate at this time so that Counter-Claimant and Counter-Defendants may ascertain their respective rights and duties to the extent they relate to the trademarks and/or copyrights at issue, the incidents alleged in Plaintiff's Complaint, and to avoid a multiplicity of lawsuits.

## SECOND CAUSE OF ACTION

(Cancellation of Trademark Against all Counter-Defendants)

48. Counter-Claimant hereby incorporates by reference each and every allegation contained in paragraphs 1 through 47 as though fully set forth herein.

49. On July 6, 2010, Counter-Defendant caused to be filed a trademark application in the United States Patent and Trademark Office for the mark "LITTLE LUPE" in connection with "Entertainment services in the form of adult entertainment provided via a global computer network, namely, providing a website featuring adult-oriented images", U.S. Application Serial No. 85078846.

50. However, as set forth above, Counter-Claimant is the legal and/or equitable owner of the trademark/service mark "Little Lupe", Counter-Defendants do not have any ownership interests in said mark, and Counter-Defendants were never given consent by

Ms. Vergara or Lupe Fuentes, LLC to register or attempt to register the mark "Little Lupe" which identifies a living individual, i.e., Ms. Vergara.

51. Counter-Claimant is informed, believes and thereupon alleges that additional applications and/or registrations filed by Counter-Defendants exist in connection with the "Little Lupe" name and/or confusingly similar variations thereof.

52. Counter-Claimant is hereby entitled, pursuant to the authority vested in the Court and 15 U.S.C §1116, to injunctive and equitable relief, including but not limited to, an order of the Court forfeiting or cancelling U.S. Application Serial No. 85078846, and any other application(s) and/or registration(s) filed by Counter-Defendants relating to the "Little Lupe" name or any confusingly similar variation thereof, or transferring said application(s) and/or registration(s) to Counter-Claimant.

## THIRD CAUSE OF ACTION

(Cyberpiracy in Violation of 15 U.S.C §1125(d) Against all Counter-Defendants)

53. Counter-Claimant hereby incorporates by reference each and every allegation contained in paragraphs 1 through 52 as though fully set forth herein.

54. Counter-Defendants registered the domain address www.littlelupe.com.

55. As set forth above, Counter-Claimant is the legal and/or equitable owner of the trademark/service mark "Little Lupe", Counter-Defendants do not have any ownership interests in said mark, and Counter-Defendants were never given consent by Ms. Vergara or Lupe Fuentes, LLC to register or attempt to register the mark "Little Lupe" which identifies a living individual, i.e., Ms. Vergara.

56. Counter-Defendants domain address www.littlelupe.com is identical and/or confusingly similar to Counter-Claimant's mark "Little Lupe". Counter-Claimant is informed, believes and thereupon alleges that additional domain addresses have been registered by Counter-Defendants in connection with the "Little Lupe" name and/or confusingly similar variations thereof.

57. Counter-Claimant is informed, believes and thereupon alleges that Counter-Defendants have and at all times had a bad faith intent to profit from the mark "Little Lupe" and in furtherance thereof, have registered, traffic in and/or use domains that are identical and/or confusingly similar to the mark "Little Lupe", including but not limited to the domain address www.littlelupe.com.

58. Counter-Claimant is hereby entitled, pursuant to the authority vested in the Court and 15 U.S.C §1125(d)(1)(C), to injunctive and equitable relief, including but not limited to, an order of the Court forfeiting or cancelling the domain address www.littlelupe.com, and any other domain addresses registered, trafficked in and/or used by Counter-Defendants relating to the "Little Lupe" name or any confusingly similar variation thereof, or transferring the domain addresses to Counter-Claimant.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Advantage Against all Counter-Defendants)

59. Counter-Claimant hereby incorporates by reference each and every allegation contained in paragraphs 1 through 58 as though fully set forth herein.

60. At all times prior to the actions alleged herein, Counter-Claimant enjoyed favorable economic business relationships with its business partners, payment processors, and subscribing members, etc.

61. Counter-Claimant is informed, believes and thereupon alleges that Defendants were aware and had full knowledge of the favorable economic relationships between Plaintiff and its business partners, payment processors, and subscribing members, etc.

62. Counter-Claimant is informed and believes that in an effort to intentionally interfere with the prospective economic business relationships referenced herein, Counter-Defendants, either directly or through agents acting on their behalf, undertook efforts to interfere and disrupt the same and/or divert Counter-Claimant's business relationships to themselves by embarking on a smear campaign.

63. In furtherance thereof, Counter-Claimant is informed and believes that Counter-Defendants contacted Counter-Claimant's business partners, payment processors, current and prospective subscribing members, both directly as well as indirectly through malicious media press releases, in an attempt to spread false accusations about Counter-Claimant regarding its business ethics, reputation, and proprietary ownership rights.

64. Moreover, Counter-Claimant is informed and believes and thereon alleges that Counter-Defendants have engaged in baseless litigation tactics against Counter-Claimant's credit card processing and billing processing entities, including National Net billing and processing, NETBILLING, INC., and LOCAL BILLING, LLC, entities who neither own, control, host, distribute, or otherwise disseminate images or content of any nature, but simply process credit card and billing information.

65. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendants have engaged in such conduct for the sole purpose of crippling Counter-Claimant's financial resources, by causing the billing and processing companies to terminate their services to Counter-Claimant, thereby eliminating Counter-Claimant's revenue stream.

66. Counter-Claimant is informed and believes and thereon alleges that Counter-Defendants' actions were undertaken with the specific intent to interfere with Counter-Claimant's prospective economic business relationships and induce the same to cease and severe their relationships therewith and engage in such relations with Counter-Defendants.

67. As a direct and proximate result of Counter-Defendants' actions, Counter-Claimant has suffered significant damages to its prospective economic business relationships, the true nature and extent of which is unknown at this time and is ongoing. Furthermore, Counter-Defendants' conduct was performed with such conscious disregard of Counter-Claimant's rights, such as to constitute malice and oppression, thereby rendering Counter-Defendants liable for punitive damages in an amount to be proven at time of trial.

1  WHEREFORE, Counter-Claimant prays that the Court make its declaration and orders and enters its judgment against Counter-Defendants, and each of them, as follows:

1. For a judicial declaration of Counter-Claimant's rights as set forth herein;
2. For injunctive and equitable relief in favor of Counter-Claimant as set forth herein;
3. For an award of actual damages in favor of Counter-Claimant in an amount to be proven at trial;
4. For an award of Counter-Claimant's reasonable attorneys' fees and litigation costs;
5. For an award of punitive damages in an amount to be proven at trial; and
6. For such other and further relief as the court may deem just and proper.

DATED: September 23, 2010          BEITCHMAN & ZEKIAN, P.C.

/s/ David P. Beitchman
David P. Beitchman
Attorneys for Counter-Claimant
LUPE FUENTES, LLC